ALDRICH *v.* J. CALVERT'S SONS.

1. APPEAL AND ERROR — EXCEPTIONS — SAVING QUESTIONS FOR REVIEW—PRACTICE.

In an action for breach of contract to furnish gravel where the contract provided the price of gravel should not exceed the price required or received by another competing company, and where the defendant moved to strike out the testimony relating to the market price on the ground that the contract stated the price received by the gravel concern should govern, the motion being denied by the court, there was no ground for the consideration and review of the contention that the contract was in restraint of trade and therefore illegal. In order that the point may be reviewed on error it is necessary

to raise the same in the lower court and except to the adverse ruling.

2. SALES—CONTRACTS—TRIAL—QUESTION FOR JURY.

Where a contract for the sale of a quantity of gravel to be delivered to the defendant provided that the price should not exceed that charged by a competing company and the court submitted the case to the jury upon the theory that if the contract remained in force throughout the season and the parties did not mutually abandon its provisions, plaintiff was entitled to recover and that if the other dealer lessened the price the verdict should be correspondingly diminished, the construction of the contract was not thereby submitted to the jury so as to constitute reversible error.

Error to Wayne; Hally, J. Submitted April 8, 1915. (Docket No. 27.) Decided June 7, 1915.

Case by Byron S. Aldrich against J. Calvert's Sons for breach of a special contract. Judgment for plaintiff. Defendant brings error. Affirmed.

*Ralph B. Wilkinson*, for appellants.

*James Swan*, for appellee.

KUHN, J. The parties hereto entered into the following agreement:

"Agreement entered into this 11th day of February, 1911, between Byron S. Aldrich, of Detroit, Michigan, and J. Calvert's Sons, of the same place, witnesseth:

"*First.* That said Aldrich, in consideration of the agreements of J. Calvert's Sons hereinafter contained, agrees and binds himself to deliver to J. Calvert's Sons, f. o. b. cars Solvay dock, at such times and in such quantities as said J. Calvert's Sons may direct, all the lake sand and gravel ordered by them for the season of 1911.

"*Second.* That J. Calvert's Sons agree that, upon delivery by said B. S. Aldrich of all sand and gravel ordered as above, they will pay therefor, within 30 days of the date of delivery, $0.50 for each cu. yd.

of sand, and $0.75 for each cu. yd. of gravel, so delivered.

"*Third.* It is further agreed that J. Calvert's Sons will pay 10 cents per yard extra for each and every car that may be shipped for their account direct to a consumer, as long as consumer's prices of sand run from $0.90 to $1.20 and the consumer's prices of gravel from $1.15 to $1.35. Should these prices be reduced, said B. S. Aldrich agrees to reduce price to J. Calvert's Sons, or release them from further obligations hereunder.

"*Fourth.* Should the C. H. Little Company reduce the price of sand and gravel that would net J. Calvert's Sons less than above prices, then B. S. Aldrich agrees to meet the C. H. Little Company's prices on sand and gravel to J. Calvert's Sons as long as C. H. Little Company's reduced prices are in force, or release J. Calvert's Sons from further obligations hereunder.

"BYRON S. ALDRICH.

"J. CALVERT'S SONS."

Thereafter sand and gravel were delivered on this contract, and settlements were made monthly for all the sand and gravel delivered during the preceding month, and such as was delivered up to October 1, 1911, was paid for in full. It is the claim of the defendants that on or about October 1, 1911, the C. H. Little Company reduced the price on sand and gravel, and the parties do not agree as to how much the claimed reduction amounted to. It is conceded by plaintiff that he was told of the reduction of price by the C. H. Little Company, but he claims that the order upon which the reduction in price is based was "a fake order or a fake proposition upon the part of the C. H. Little Company," a business competitor, in order to embarrass him. It is his claim that, when told of this, he said he would not meet the price and told the defendants to get it through Little, and that by this he released the defendants from any further obligations under the contract; that the contract

was abrogated, and that he was entitled to charge the market price for all sand and gravel thereafter delivered, which it appears was only delivered to defendants upon orders. It is defendants' claim that the contract still remained in force, and that the plaintiff was bound by the price charged by the C. H. Little Company. The issue thus formed by the contentions of the parties was submitted to the jury by the trial judge, with the following instructions:

"Did that contract continue in force as to both of these parties throughout the season, or was it by words or by conduct mutually understood that the contract was at an end? If you find that the contract remained intact throughout the season, then the parties would be bound by that contract, which remained intact throughout the season, and if, under the terms of that contract, that price was to be lessened, as some other dealer lessened it, and if you find the fact to be that the other dealer did in fact lessen it, and that the lessening of the amount leaves no balance due between these parties, your verdict will respond accordingly. If, on the other hand, you find that by conduct, or mutual consent, or words, the contract was terminated between these parties, but thereafter they continued to do business, then from every yard of sand or gravel that was sold by the one and purchased by the other the purchaser would be obliged to pay whatever was the reasonable worth of it, or as the attorneys here express it, the market value of that. From the evidence that has been here introduced, you are to say what that market value was. If you find that market value to be one thing, why then your verdict will have to respond in that fashion. If you find the market value to be as the plaintiff says it is, the plaintiff here or his attorney has given you the amount of money that he asks by way of judgment."

Judgment being entered on a verdict in favor of the plaintiff, counsel for the defendants, who bring the case here, urges the following:

*First.* Error of the court in the admission of the

testimony of Byron S. Aldrich as to the market price of sand and gravel.

*Second.* The court's error in leaving the construction of the contract to the jury.

*Third.* The defendants were not bound to purchase from the plaintiff all the sand and gravel bought by them in the season of 1911 when the plaintiff was unable to furnish the amount as ordered.

During the examination of the plaintiff, in order to show the market price in Detroit, the following was made to appear:

"*Q.* You knew the running price then in the market at Detroit?

"*A.* Yes, sir.

"*Mr. Wilkinson:* I move to strike that out on the ground that it is not the market price. He said himself the C. H. Little Company were the only ones who furnished this stuff. Now, no basis has been laid for that. The contract simply mentions C. H. Little Company. The market price of the material. * * * The contract refers simply to the C. H. Little Company, and it says that if C. H. Little Company shall reduce that price that he shall follow. The market price is entirely immaterial in this case, and especially in view of the testimony, that he says himself that C. H. Little Company is the only one bringing sand in here.

"*A.* I would like to qualify that statement. At the beginning of navigation that was so, but along about the summer time the firm of E. Jacques & Son got a dock down here on the river and they began to haul sand and gravel.

"*Q.* Now, then, state whether or not that was the market price at that time.

"*Mr. Wilkinson:* Same objection and exception.

"*Q.* 75 cents for gravel and 50 cents for sand?

"*A.* That was the price I received from these other builders' supplies the whole year; that was the contract.

"*The Court:* What was the price that the other people that were handling charged? What did Houghton charge?

"*A.* It was supposed to be the same price. It was rather of a gentlemen's agreement among the producers; we charged 75 cents and 50.

"*Mr. Wilkinson:* I object to that as contrary to the statute of the State of Michigan, contrary to public policy.

"*The Court:* Could that objection be made in this proceeding, Mr. Wilkinson?

"*Mr. Wilkinson:* I presume so, because he says that prices were fixed by gentlemen's agreement.

"*Q.* After November—October 31st, or November 1st—when you had the conversation with Mr. Calvert?

"*A.* Well, the price was even more; that is because, as the season advanced, the dealers raised the price 10 and 15 cents a yard.

"*Mr. Wilkinson:* I object to that also, and move that it be stricken out, on the ground that the contract states that the C. H. Little Company's price is the determining price for this contract.

"*The Court:* You may have an exception."

It is urged by counsel for appellant that the testimony with reference to market price should have been stricken from the record, because it showed that there was an agreement made between persons engaged in this business as to price in direct violation of section 11377, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14753). This statute in substance declares all contracts in restraint of trade to be illegal and void, and makes all parties offending against its provisions guilty of a conspiracy, and inflicts a penalty. From the record above quoted it does not appear that the court ruled upon this question, or that any exception was taken thereto. The only motion with reference thereto was that the answer be stricken out on the ground that the contract stated that the C. H. Little Company's price was the one which should determine, and this motion was denied by the court. We are of the opinion that the matter is not before us on this record, and are satisfied that there

was sufficient evidence of the market value of sand and gravel to submit the question to the jury.

We do not think that the second ground urged by appellant, that the court left the construction of the contract to the jury, has any merit, as a careful examination of the entire charge, read as a whole, is satisfying that the real question in issue was fairly presented to the jury, as is clearly indicated by the excerpt from the charge set forth in this opinion. The following statement is made in appellant's brief:

"The question arose as to whether by the terms of the contract the defendant was obliged to purchase all of its sand and gravel from the plaintiff."

The record does not show that any such question was raised, nor was there any such contention or claim made by the counsel for plaintiff, either in his brief or on the oral argument.

We are of the opinion that the real question in issue was properly submitted to the jury, and the judgment of the lower court should be, and therefore is hereby, affirmed.

BROOKE, C. J., and McALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.